UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

NAOMI LUTES,

       Plaintiff,

     v.

LONI CORPORATION, INC.,
*doing business as Red Apple Restaurants*,

       Defendant.

Case No. 10-cv-57-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Loni Corporation, Inc.'s (hereinafter "Loni") Motion to Dismiss (Doc. 4). Specifically, Loni seeks a dismissal of Count I, alleging *quid pro quo* sexual harassment, and Count II, alleging hostile work environment, of the operative Complaint (Doc. 2). Plaintiff Naomi Lutes (hereinafter "Lutes") filed a Response (Doc. 9), to which Loni filed a Reply (Doc. 12).

For the following reasons, the Court **GRANTS in part and DENIES in part** the instant motion.

### BACKGROUND

**I.    Facts**

For purposes of a motion to dismiss, courts must accept all factual allegations in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007). The Court, accepting all of Lutes' factual allegations as true and drawing all reasonable inferences in her favor, finds as follows:

In 1997, Loni, doing business as Red Apple Restaurants, hired Lutes as a waitress at its Maryville, Illinois location. Although Lutes would excel in this position, her tenure with Loni was less than pleasant.

Shortly after starting at the restaurant, Lutes became the subject of harassment, sexual comments, and physically unwanted touching by most of her male coworkers. On a daily basis, the restaurant's male employees made sexually derogatory comments, slapped the female employees, including Lutes, on the buttocks, and generally demeaned their female counterparts. This conduct was solely motivated by gender, as evidenced by the fact that no comparable action was taken against any male employee. The harassment of Lutes reached new heights on April 4, 2009, when she was working with a male dishwasher named Muhammed Beluli (hereinafter "Beluli"). While in the kitchen together, Beluli, without warning and without consent, inserted his finger into Lutes' body. Lutes was forced to quit the restaurant nine days later.

During Lutes' twelve-year career with Loni, her direct supervisor was Adem Rushiti (hereinafter "Rushiti"), the manager of the Maryville restaurant. Despite the fact that the aforesaid harassment was common knowledge at Loni and despite the fact that Lutes continuously reported said conduct to Rushiti, who personally witnessed much of it, Rushiti chose not to discipline the antagonists. Lutes eventually decided to take matters into her own hands and bring legal action against Loni.

## II.    Relevant Procedural Posture

On April 21, 2009, Lutes filed a charge of discrimination form with the Illinois Department of Human Rights and Equal Employment Opportunity Commission (hereinafter "EEOC"). (*See* Doc. 2-2). Following completion of the administrative process, Lutes received a right to sue notice from the EEOC.

On January 25, 2010, Lutes timely filed a lawsuti with this Court, alleging various claims against Loni under Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), 42 U.S.C. § 2000e, *et seq*. Specifically, Lutes alleges the following three claims: *quid pro quo* sexual harassment (Count I); hostile work environment (Count II), and; negligent supervision (Count III). Shortly thereafter, Loni filed the instant motion to dismiss, which seeks to dismiss Counts I and II with prejudice. Federal Rule of Civil Procedure 12(b)(6) serves as the basis of said motion for purported failure to state a claim upon which relief can be granted.

## ANALYSIS

Following a general overview of the law governing motions to dismiss and federal notice pleading, the Court will delve into the relevant law surrounding *quid pro quo* sexual harassment and hostile work environment claims, especially in the context of dismissal motions, and apply it to the facts before the Court.

### I.   Motions to Dismiss Generally

The federal system of notice pleading requires only that the plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Therefore, the complaint need not allege detailed facts, *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007); likewise, "a 'complaint need not spell out every element of a legal theory' to provide notice." *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999) (quoting *Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 261 (7th Cir. 1998)).

However, in order to provide fair notice of the grounds for his claim, the plaintiff must allege sufficient facts "to raise a right to relief above the speculative level." *Pisciotta*, 499 F.3d at 633 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must offer "more than labels and conclusions, and a formulaic recitation of a cause of action's

elements will not do." *Id*. The plaintiff's pleading obligation is to avoid factual allegations "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under [Federal] Rule [of Civil Procedure] 8." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). Nevertheless, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563 n.8.

## II.    *Quid Pro Quo* Sexual Harassment

The protective power of Title VII extends to sexual harassment directly linked to the grant or denial of an economic *quid pro quo*. *See, e.g., Bryson v. Chicago State Univ.*, 96 F.3d 912, 915 (7th Cir. 1996); *Horn v. Duke Homes*, 755 F.2d 599, 603 (7th Cir. 1985). Section 1604.11 of the EEOC Guidelines explicitly describes such conduct as follows:

> Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or impliedly a term or condition of an individual's employment, [or] submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual[.]

29 C.F.R. § 1604.11(a) (West 2010); *Bryson*, 96 F.3d at 915. In other words, "*quid pro quo* harassment occurs in situations where submission to sexual demands is made a condition of tangible employment benefits." *Bryson*, 96 F.3d at 915 (relying upon *Dockter v. Rudolf Wolff Futures, Inc.*, 913 F.2d 456, 461 (7th Cir. 1990)); *Marchioni v. Bd. of Educ. of City of Chicago*, 341 F. Supp. 2d 1036, 1043 (N.D. Ill. 2004).

While not specifically stated in § 1604.11, *quid pro quo* sexual harassment may only be committed by one's employer and/or supervisor, not a coworker. *See Bryson*, 96 F.3d at 915

(explaining the five elements that many courts require one to prove in order to sustain a *quid pro quo* claim, one of which is "the employee's reaction *to the supervisor's advances* [must have] affected a tangible aspect of her employment.") (emphasis added). Indeed, the *quid* in the claim's name represents the power or leverage that an employer and/or supervisor holds over his subordinates, which usually does not exist between mere coworkers. This distinction is supported by case law decided in the motion to dismiss context. *See, e.g., Vonderohe v. B & S of Fort Wayne, Inc.*, 36 F. Supp. 2d 1079, 1084 (N.D. Ind. 1999) (defendants conceded that plaintiff's allegations that she was fired for refusing the sexual demands of her *supervisors* and coworkers effectively stated a *quid pro quo* claim); *Piech v. Arthur Andersen & Co., S.C.*, 841 F. Supp. 825, 829-30 (N.D. Ill. 1994) (allegations that women who granted sexual favors to *decision-makers* received professional advancement, and women who refused to grant such favors did not, were sufficient to state a quid pro quo sexual harassment claim); *Stefanski v. R.A. Zehetner & Assocs., Inc.*, 855 F. Supp. 1030, 1033 (E.D. Wis. 1994) (plaintiff sufficiently pled a *quid pro quo* claim in alleging that *supervisor* sprayed employee with fire extinguisher and that employer forced employee to work with supervisor following his reinstatement despite her wish to avoid contact with him); *Johnson v. Indopco, Inc.*, 846 F. Supp. 670, 673-74 (N.D. Ill. 1994) (allegations as to *employer's* improprieties withstood defendant's motion to dismiss).

  Here, Loni primarily targets Lutes' *quid pro quo* sexual harassment claim on the basis that it asserts overly-general statements of law and legalese. However, the Court is less concerned with this argument as it is Loni's brief mention that "Plaintiff has alleged nowhere in her Complaint that her supervisor, or any other employee at Loni Corporation, Inc., conditioned tangible aspects of her employment upon her submission to sexual demands or advances." (Doc. 4, p. 3, ¶ 9). This is true, likely because it appears that Lutes did not suffer from any direct

harassment by her superiors. To wit, there is no explicit or implied allegation that Lutes was ever harassed by Rushiti or any other superior during her twelve-year tenure at the restaurant. Rather, the general conduct to which Lutes' complaint refers was committed by her coworkers, and the only specific instance to which it refers was committed by Beluli, a dishwasher.

Put simply, the requisite *quid pro quo* simply could not have been maintained by Lutes and these coworkers, as they did not have the power to make the harassment a term or condition of Lutes' employment. The *quid pro quo* sexual harassment claim therefore fails to state a claim upon which relief may be granted, and the Court must dismiss it with prejudice.[1]

### III.     Hostile Work Environment

Title VII sexual harassment claims can also relate to a hostile work environment, which is created by "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature [that] . . . has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a) (West 2010); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986); *accord Cooke v. Stefani Mgmt. Servs., Inc.*, 250 F.3d 564, 566 (7th Cir. 2001). "To establish a *prima facie* case of sexual harassment under Title VII, a plaintiff must ultimately show that 1) she was subjected to unwelcome harassment; 2) the harassment was

---

[1] A district court may deny a plaintiff leave to amend her complaint if it would be futile to do so. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997); *Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir. 1991). "The opportunity to amend a complaint is futile if the complaint as amended would fail to state a claim upon which relief could be granted." *Gen. Elec.*, 128 F.3d at 1085 (quotation and citations omitted).
   Here, Lutes' complaint does not allege that Rushiti or any other manager with Lutes engaged in the harassment at issue. The Court is confident that any re-pleading of the *quid pro quo* claim would therefore be futile, and it should be dismissed with prejudice.

based on her sex; 3) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere; and 4) there is a basis for employer liability." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 788 (7th Cir. 2007) (reversing summary judgment in favor of defendant); *Kampmier v. Emeritus Corp.* 472 F.3d 930, 940 (7th Cir.2007) (affirming in part and reversing in part summary judgment for defendant).

Unlike *quid pro quo* sexual harassment claims, hostile work environment claims need not necessarily be premised upon harassment from a superior. "[A]n employer is responsible for acts of sexual harassment [between fellow employees] in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action." § 1604.11(d). As example to this, an employer is vicariously liable for coworker harassment if it was "negligent either in discovering or remedying the harassment." *Mason v. S. Ill. Univ. At Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000) (quoting *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998).

In the instant case, Lutes has alleged the necessary elements for a hostile work environment claim. Specifically, in the operative complaint, Lutes chronicles the general harassment that she and her other female coworkers were forced to endure. She discusses her encounter with Beluli, which was tantamount to sexual assault, in greater detail. Lutes explains that, despite being aware of the actions of his male subordinates, Rushiti repeatedly turned a blind eye to the harassment. All of this harassment, Lutes alleges, was based on her sex and created a hostile work environment that ultimately led to her leaving the restaurant. Contrary to

7

Loni's assertions,[2] the Court is satisfied that these allegations, in conjunction with the expectations of federal notice pleading and the elements of a hostile work environment claim discussed *supra*, state a claim upon which relief may be granted.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Loni's Motion to Dismiss (Doc. 4).  Specifically, the Court **DISMISSES with prejudice** Count I, alleging *quid pro quo* sexual harassment, of the operative Complaint (Doc. 2).  The Court **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of this case.  Count II, alleging hostile work environment, shall continue onward.

**IT IS SO ORDERED.**
**DATED: May 14, 2010**

                                              s/ J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **DISTRICT JUDGE**

---

[2] Loni relies heavily upon *Perkins v. Silverstein*, 939 F.2d 463 (7th Cir. 1991), wherein the Seventh Circuit affirmed dismissal of plaintiffs' Title VII claims due to a general lack of specificity, to argue that Lutes fails to state a hostile work environment claim.  The Court finds the instant complaint to be highly distinguishable from that in dispute in *Perkins*, especially given Lutes' general and specific description of the harassment that went on at the restaurant.

Loni also argues that "Plaintiff has not identified any instances in which her supervisor engaged in conduct which was unwanted and unwelcome harassment." (Doc. 4, p. 4, ¶ 14).  However, this argument is misplaced because, pursuant to the applicable regulation and *Mason*, such identification is not required in a hostile work environment claim.

Finally, Loni contends that "[o]ne [specified] instances of harassment alone clearly does not amount to harassment which is 'severe and pervasive.'"  However, at this stage in the litigation, the Court need not address this issue.  Rather, the Court needs to merely discern whether the operative complaint states a claim for hostile work environment, which, for reasons discussed throughout this memorandum and order, it does.